In re Harry SILVERMAN, d/b/a Gardner Realty Trust, Debtor.

Bankruptcy No. 4–80–653–G.

United States Bankruptcy Court, D. Massachusetts.

Aug. 7, 1981.

Paul R. Salvage, Springfield, Mass., for debtor.

Gregory A. Schmidt, Springfield, Mass., for Community Savings Bank.

## MEMORANDUM DECISION ON COMMUNITY SAVINGS BANK'S MOTION TO COMPEL COMPLIANCE WITH STIPULATION

PAUL W. GLENNON, Bankruptcy Judge.

This matter arose on a motion by Community Savings Bank to compel the debtor-in-possession to comply with the terms of a stipulation filed with and approved by this court on February 3, 1981. This memorandum represents the court's conclusion of fact and law after due consideration of oral and written arguments submitted by counsel for both parties.

Harry Silverman, d/b/a Gardner Realty Trust (the "debtor" or "Silverman") mortgaged business property in Springfield with the Community Savings Bank (the "bank"). He is currently in arrears on his mortgage payments, and has been in arrears since he filed his Chapter 11 petition on October, 1980. In an effort to prevent foreclosure on the property by the bank, Silverman entered into a stipulation with the bank. The stipulation provided that Silverman was free to arrange a voluntary sale of the property until May 15, 1981. If the property was not sold by that date, a public auction was to be held. If neither of these activities resulted in a satisfactory sale to protect the bank's interest, on June 1, 1981 Silverman was to execute a deed in favor of the bank.

Silverman was not able to arrange a voluntary sale by May 15, 1981, and pursuant to the stipulation a public auction of the property was held on May 19, 1981. The highest bid offered was $300,000 which the debtor rejected. The total indebtedness on the property was $315,000. The $300,000 offer represented a substantial deficiency from the debtor's perspective. The debtor did not deliver the deed to the bank on June 1, 1981. Instead on June 9, 1981, the debtor executed a purchase and sales agreement with a buyer for sale of the property at $340,000. This sales agreement requires that the bank accept an arrangement which allows the purchaser to assume the outstanding mortgage of Harry Silverman at a 9% rate of interest after all arrearages and penalties are paid. The bank has objected for two reasons: first, the purchase and sales agreement was executed after the deadline of the stipulation had passed, and second, under the terms of its mortgage with Silverman the bank does not have to permit assumption of the existing mortgage when the property is sold.

The debtor has answered that in filing a plan of reorganization, the debtor after curing defaults can reinstate the maturity of the claim or interest. 11 U.S.C. §§ 1124(2). The debtor argued that the proposed sale in effect will cure the default and in addition would fund the debtor's plan for reorganization. At the time of the hearing, no plan had yet been filed.

There are no factual disputes between these two parties; there are matters of law to decide. These are: (1) Was the debtor free to arrange for a sale of the collateral once the deadline of the stipulation had passed?, and (2) Can the debtor use the procedures for confirming a plan under Chapter 11 to affect the rights of a creditor before any plan has been prepared?, and (3) Can the debtor use the provisions of 11 U.S.C. § 1124 to impair the creditor's rights created by a post-petition stipulation?

The stipulation was negotiated by the debtor in exchange for an additional three months time to find a buyer, and for that time to be free of litigation pressures from the bank concerning issues of relief from stay or adequate protection. This stipulation was arranged almost four months after the debtor's petition was filed. At that time, no plan had been filed even though the 120 day period in which the debtor has the exclusive opportunity to file

a plan of reorganization had nearly run. 11 U.S.C. § 1121. The debtor also made no provisions to file a plan between February 3 and June 1, 1981.

This court is of the opinion that the debtor entered voluntarily a stipulation that had all of the essential characteristics of a mutual contract. *Miller v. Winshall,* 1980 Mass.App.Adv.Sh. 407, 400 N.E.2d 1306 (1980), and *Paine v. Chicago & N. W. Ry. Co.,* 217 Wis. 601, 258 N.W. 846 (1935). The debtor has received the benefits conferred by the bank, and now balks at performing himself. Furthermore, at no point before the deadline did the debtor act to modify or vacate the effect of the stipulation in anticipation of filing a plan of reorganization. Therefore, the stipulation which was approved by this court is binding on the parties.

■ In his arguments to avoid the effect of the stipulation, the debtor has used the provisions of the Bankruptcy Code that provide for impairments of claims or interests to formulate the plan of reorganization as stepping stones to overcome some contractual difficulties with both his mortgage and the effects of the stipulation. See 11 U.S.C. §§ 1123 and 1124. The provisions in the Bankruptcy Code which allows some interests or claims to be impaired only come into play with the filing of a plan. The debtor has asked the court to approve a sale that may impair a creditor's interest without providing the procedural protections that are due such a creditor. 11 U.S.C. §§ 1121–1129.

A creditor class, which has not yet been designated, whose rights may be impaired, must have an opportunity to study the disclosure statements that accompany the plan. 11 U.S.C. § 1125. Such a creditor is given an opportunity to be heard at a hearing concerning the disclosure statement, and then may voice its objections at a hearing on the confirmation of the plan. 11 U.S.C. § 1125 and § 1128. By seeking to impose the possible effects of a plan, including a potentially impaired contractual status for this creditor, the debtor has asked this court to ignore the provisions in the

Bankruptcy Code that were specifically designed to allow a creditor to be heard on the issues that directly affect its interests, i. e., 11 U.S.C. § 1109 (a party in interest may appear and be heard on any issue in a case under Chapter 11.); 11 U.S.C. § 1125 (A creditor should be informed of the contents of a plan before his acceptance or rejection is solicited, and it should have the opportunity to be heard at a disclosure hearing.); and lastly, 11 U.S.C. § 1128 (A party in interest may object to confirmation of a plan.). The debtor's proposal to allow its planned sale suggests a means of funding a plan without giving this creditor any opportunity to object.

■ The debtor further contends that this creditor would not be impaired as defined in 11 U.S.C. § 1124(1). The debtor contends that he would cure defaults under the mortgage by this sale and leave the creditor whole. 11 U.S.C. § 1124(2). The creditor argues that it holds a valid mortgage on the debtor's property that calls for payment of the entire balance of the mortgage when the property is sold. More importantly, the creditor here is seeking an enforcement of its rights under a post-petition stipulation. The debtor's plan of sale conflicts with the bank's rights under the stipulation, and the bank has rejected it. If the issue before this court were solely the effect of the mortgage clause on a formally proposed plan as the debtor contends, it would need more evidence on whether the contractual rights of the creditor had been altered. 11 U.S.C. § 1124(2)(D). This residual contractual issue could have presented an impediment to a plan upon which both the debtor and creditor would have had to be heard.

But, the issue before the court now is not a plan of reorganization, but a motion to compel compliance with a stipulation. When the debtor negotiated and agreed to the terms of the stipulation, the debtor agreed also to a time limit on his ability to present a plan that involved this property. The debtor did not act to propose a plan of reorganization or to complete an advantageous sale of the property within those time

restraints. His ability to act now depends on the voluntary cooperation of the bank; otherwise the debtor is bound by the terms of the stipulation, and must turn over to the bank the deed to the property.

The court needs to emphasize that the creditor bank is not claiming the right to the collateral from rights derived from its pre-petition mortgage claims, but is claiming the right created by its negotiated stipulation. Even if the debtor had proposed a plan of reorganization, Section 1123 of Title 11 of the United States Code on the classification requirements of creditors addresses itself to pre-petition creditors who have proved their claims. The bank in a voluntarily negotiated stipulation waived its right to press for relief from stay in exchange for either an advantageous sale of the property and repayment of its debt or turnover of the deed. This stipulation created for the bank a post-petition contractual right that is different from its rights under the mortgage. The impairment of pre-petition contractual provisions that might be possible under a Chapter 11 plan does not apply to post-petition contracts such as this stipulation. The parties who negotiate such stipulations must be aware that they have altered their relationships, and will be bound by the terms of the new agreement.

Furthermore, the court is aware of the importance that stipulations and negotiated settlements play in the management of a reorganization case. Each debtor-creditor relationship is but a splinter off the log of the entire case. Much of the nature of reorganization is to negotiate mutually advantageous arrangements between the debtor and his creditors. If a party to a stipulation can unilaterally waive its terms whenever the circumstances change in that party's favor, the beneficial activity of negotiation and settlement will cease. This court is not willing to countenance the damage that could be done to the orderly administration of reorganization cases by permitting a party to slip free of the terms of a voluntarily negotiated stipulation whose terms were approved by this court. Therefore, the debtor is ordered to honor the terms of the stipulation, and to turn over the deed to the bank.